631 P.2d 577

Diane BOYD and Barbara Lutgendorf, Petitioners/Appellants,

v.

MARY E. DILL SCHOOL DISTRICT NO. 51; Mary E. Dill School District Board of Education; and William J. Kelly, Administrator, Real Parties in Interest, Respondents/Appellees.

No. 2 CA–CIV 3840.

Court of Appeals of Arizona, Division 2.

June 17, 1981.

Gonzales & Villarreal, P. C. by Richard J. Gonzales, Tucson, for petitioners/appellants.

Stephen D. Neely, Pima County Atty. by Mark R. Christensen, Tucson, for respondents/appellees.

OPINION

HATHAWAY, Chief Judge.

Appellants are probationary teachers (teachers) whose employment contracts were not renewed. They brought a special action in superior court in Pima County challenging the action of the appellees (board). On this appeal, they seek review of the dismissal of their special action, contending the trial court erred when it (1) determined that the board had not violated the open meeting statute, A.R.S. Sec. 38–431.03; (2) determined that the reasons underlying the non-renewal were properly formulated under A.R.S. Sec. 15–252; (3) refused to receive evidence on the reasons given by the board for the non-renewal; and (4) determined that earlier board action renewing the appellants' contracts was not res judicata.

The facts are not disputed. Appellants were certified teachers of the Mary E. Dill School District, No. 51, and had been employed by the school district for the preceding three years. They were "probationary" teachers as defined in A.R.S. Sec. 15–251(A)(3). A teaching contract for a fourth year, the school year 1980–81, would have given them tenure under A.R.S. Sec. 15–251(A)(2).

On April 7, 1980, the school administrator, William J. Kelly, served the teachers with a written notice that he would recommend to the board that the teachers' contracts not be renewed for the school year 1980–81. Reasons for the recommendation were set forth in the notices. As to Boyd, the reasons were:

1. Failure to comply with rules and regulations of the school district.

2. Inability to accept constructive criticism.

3. Antagonistic attitude towards the administration.

4. Lack of interest and initiative in pursuing district goals and objectives.

5. Failure to accept suggestions and to cooperate with the principal.

6. Interference with the duties and responsibilities of the administrator.

As to Lutgendorf, the reasons were:

1. Failure to comply with rules and regulations of the school district.

2. Failure to accept suggestions and to cooperate with the administrator.

3. Inability to accept constructive criticism.

4. Interference with the duties and responsibilities of the school administrator.

5. Antagonistic attitude towards the administrator.

The teachers were advised in the notices that the board intended to discuss the contracts in executive session at the regularly scheduled board meeting on April 10, 1980, but that they could request that the matter be discussed in an open public meeting. Both teachers requested the open meeting. The two-member board undertook consideration of the teachers' contracts with a motion from member Linden Backer that Kelly's recommendation of non-renewal be adopted. Board president Roger McDaniel seconded the motion. Oral objections were made from the floor and a discussion ensued including the reasons for non-renewal, and the teachers' failure to comply with rules and regulations of the school district. The board then recessed for 30 to 50 minutes.

During the recess, the board president met alternately with Mr. Kelly and the attorney for the district in a private room adjacent to the meeting room. Upon reconvening, the board announced that the third and fifth reasons for non-renewal of Lutgendorf's contract were stricken and the third reason for Boyd's non-renewal was stricken, i. e., "antagonistic attitude towards the administration."

During the resumed board meeting, the president read memoranda that had been submitted by the district administrator. Spirited questioning came from the audience. Mr. Kelly changed his original recommendation and recommended that the teachers' contracts be renewed for the school year 1980–81. Without further discussion, the board adopted his recommendation.

On April 13, 1980, Mr. McDaniel and Mr. Kelly delivered written notices to the teachers of a special board meeting scheduled for April 15, 1980, to reconsider the renewal of their contracts. The teachers obtained a temporary restraining order from the superior court vacating the April 15 special board meeting. It was stipulated therein that if the order was determined inappropriate, the teachers would not thereafter assert the April 15 deadline to invalidate the non-renewal under A.R.S. Sec. 15–252(A), (B). The temporary restraining order was thereafter dismissed.

On May 2, 1980, the teachers received written notice that the board would reconsider their renewed contracts in executive session to be held on May 6, 1980. The teachers filed written requests that the meeting be opened. At that meeting, after several hours of discussion, the board adopted Mr. Kelly's new recommendation that the teaching contracts not be renewed.

■ Appellants' first question is based on the contention that the board's activities relating to the teachers' contracts were unlawful because of the recess during the April 10, 1980, meeting. They imply that a closed executive session transpired during the recess. Uncontradicted evidence shows the contrary. It indicates that the board president met with the district administrator and its lawyer during the recess. In A.R.S. Sec. 38–431(3), a meeting is defined as "... the gathering of a quorum of members of a public body to propose or take legal action, including any deliberations with respect to such action." From the statutory definition, a meeting could not

have occurred during the recess since a quorum was not present. Mr. McDaniel testified as to his conduct between the April 10, 1980, meeting and May 6, 1980.

"Q. Mr. McDaniel, at any time during the April 10th meeting, did you meet in executive session during the April 10th open meeting, during the recess or any other time?

A. Before or after?

Q. Did you meet in a back room or in executive session with Mr. Backer?

A. No, sir.

Q. Did you at any time between April 10th and May 6th meet in the back room to discuss the employment contracts with Mr. Backer, the employment contracts of the Plaintiffs with Mr. Backer?

A. No, sir.

Q. Did you meet in executive session or in private or in secret with Mr. Backer on May 6th?

A. No, sir."

A related contention is that board president McDaniel took "legal action" during the recess because he formulated the intention not to rehire the teachers while he conferred in the back room with the district's administrator and lawyer. Appellants point to *Karol v. Board of Education*, 122 Ariz. 95, 593 P.2d 649 (1979), for the proposition that the formulation of an intention not to renew a teaching contract is "legal action" within the meaning of the Arizona open-meeting statute, A.R.S. Sec. 38–431(2) (as amended).

A.R.S. Sec. 38–431(2) defines "legal action" as a "*collective* decision, commitment or promise made by a *majority* of the members of a public body . . . ." (Emphasis added). As pointed out above, McDaniel was the only board member present at the discussion during the recess. It is the board's formulation of an intention not to rehire the teachers that would be at issue under Sec. 38–431(2), not an individual board member's formulation of intent.

■ Appellants contend for their second question that the reasons underlying the non-renewal were formulated by the administrator, Mr. Kelly, and were merely "rubber-stamped" by the board at the May 6 meeting. They argue that the board cannot delegate to the administrator the board's responsibility to formulate the intent not to renew appellants' contracts. The record is clear, however, that the board made its own decision in following the recommendation of its administrator, a practice which would appear common in such matters.

"Mr. Gonzales:

Q. In any case, there had been discussion with you and Mr. Kelly prior to the April 10th meeting?

A. Yes, sir.

Q. Did you instruct Mr. Kelly to put together any document for the April 10th meeting?

A. Yes.

Q. You told him to put some documents together. What document did you tell him to put together?

A. He had informed me that there would be, he would make a recommendation that there would be non-renewal of certain teachers. And I asked him if he had the proper documentation and all of the necessary stuff to make a recommendation to the board. And he said he did. I said, okay, then make your, get your documentation together and make your recommendation to the board.

Q. Had you seen any of that documentation at that point?

A. Prior to that, no, I hadn't.

Q. Now, we are talking about two or three days before the board meeting, is that correct?

A. Well now, that could have been about as much as a month before the board meeting.

Q. Did you ultimately or subsequently get documentation?

A. Yes, sir.

Q. In support of his reasons? Can you tell me when?

A. No, sir, I can't give you an exact date. Again, as a rough estimate, as

much as a week or a little bit more in advance, two or three—it's just very—

Q. You are not sure of when you got that documentation?

A. It was a while before the meeting.

Q. And that came in the regular packet you receive as a board member prior to board meetings; is that correct?

(Objection that question was asked and answered was sustained)"

 Appellants' contention that the trial court erred in refusing to receive substantive evidence showing the misconduct cited by the board in support of their reasons for non-renewal is without merit. The trial court has no power to review the reasons given by the board for the non-renewal of the contracts of probationary teachers, unless the reasons given are so unreasonable, arbitrary and capricious that reasonable men could not differ. *Chesley v. Jones*, 81 Ariz. 1, 299 P.2d 179 (1956). We do not find that to be the case here. Additionally, the statute specifically provides that probationary teachers are not afforded a hearing. A.R.S. Sec. 15–252(D).

 Finally, appellants contend that the board's vote on April 10, 1980, to renew the contracts was res judicata to the board decision not to renew the contracts on May 6, 1980. The board was acting in its capacity as the executive authority for the school district and it is not bound by the doctrine of res judicata when acting in that capacity. *See* 2 D. Davis, Administrative Law Treatise, Sec. 18.08 (1958). Appellants contend that the board did nothing to rescind its previously adopted action and has thereby created a situation where conflicting decisions exist without having vacated the prior vote. Needless to say, the subsequent action is in conflict with the former and the former action is modified to the extent of the conflict. The latter action governs.

Affirmed.

HOWARD and BIRDSALL, JJ., concur.